UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| L.M.U., <br><br> *Plaintiff*, <br><br> v. <br><br> JEAN KING, <br>     as Acting Director, Executive <br>     Office for Immigration Review; <br><br> H. KEVIN MART, <br>     as Acting Assistant Chief <br>     Immigration Judge (Varick <br>     Street Immigration Court), <br>     Executive Office for <br>     Immigration Review; <br><br> CHARLES CONROY, <br>     as Immigration Judge (Varick Street <br>     Immigration Court), Executive <br>     Office for Immigration Review; <br><br> MERRICK GARLAND, <br>     U.S. Attorney General, <br><br>           *Defendants.* | Civil Action No. _____ <br><br><br><br><br> COMPLAINT FOR <br> DECLARATORY AND <br> INJUNCTIVE RELIEF |

**PRELIMINARY STATEMENT**

1.  L.M.U., a young asylum-seeker, has been held in discretionary immigration detention for over sixteen months. During that time, he has never received a bond hearing in which the government must show why his detention is necessary.

2.  L.M.U. has no felony or misdemeanor convictions. The only criminal charges ever levied against him allege that, as a teenager, L.M.U possessed small amounts of marijuana and that he was once with a friend who stole two twelve-packs of beer. He has one disorderly conduct violation on his record, and all other charges were dismissed.

3.   A few days before Christmas of 2019, immigration authorities arrested L.M.U. without notice at his workplace. They incarcerated him in a county jail, where he spent his nineteenth and twentieth birthdays. He was held in near-solitary conditions for months due to the COVID-19 pandemic, separated from other inmates as well as his friends and family. His mental health deteriorated, leading jail medical staff to prescribe him medication to address depression, anxiety, and sleeplessness.

4.   The sole proceeding in which a neutral adjudicator reviewed L.M.U.'s detention was a single bond hearing where L.M.U. was required to justify his release. After the hearing concluded, the immigration judge denied bond, concluding that L.M.U. "did not meet his burden of proof to establish that he does not pose a danger if released."

5.   The Constitution provides greater procedural protections than this. An "overwhelming consensus of judges in this District" have concluded that when immigration authorities detain an individual under § 1226(a), the government must demonstrate that incarceration is necessary by clear and convincing evidence. *Fernandez Aguirre v. Barr*, No. 19-cv-7048 (VEC), 2019 WL 3889800, at *3 (S.D.N.Y. Aug. 19, 2019) (collecting cases); *see also Quintanilla v. Decker*, No. 21 CIV 417 (GBD), 2021 WL 707062, at *4 (S.D.N.Y. Feb. 22, 2021); *Aparicio Jimenez v. Decker*, No. 21-CV-880 (VSB), 2021 WL 826752, at *8 (S.D.N.Y. Mar. 3, 2021).

6.   The U.S. Court of Appeals for the Second Circuit recently affirmed this consensus view as applied to a noncitizen who had been detained for fifteen months. *See Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020). Although the Court did not decide in *Velasco Lopez* whether the government should bear the burden at an initial bond hearing – and if not, precisely when the burden should automatically flip to the government – the Court held that "[o]n any

2

calculus," fifteen months of incarceration without heightened procedural safeguards violated due process. 978 F.3d at 855 n.13.

7.   Shortly after he passed the fifteen-month mark in immigration custody, L.M.U. requested a bond hearing with heightened procedural safeguards pursuant to *Velasco Lopez*. An immigration judge denied the motion, noting that although he was "cognizant of the 'on any calculus' language in *Velasco-Lopez* . . . this administrative court has no power to address a constitutional question, i.e., whether Respondent's prolonged detention has given rise to a due process violation."

8.   The immigration judge's decision is consistent with an apparent policy at the Varick Street Immigration Court of refusing to follow the constitutional holding in *Velasco Lopez* and provide burden-shifted bond hearings to individuals who have been detained for long periods of time.

9.   The government's refusal to afford L.M.U. a bond hearing in which DHS bears the burden of proof by clear and convincing evidence, and where the immigration judge must take into account reasonable alternatives to detention and L.M.U.'s financial circumstances, violates L.M.U.'s procedural due process rights, the Immigration and Nationality Act (INA), and the Administrative Procedure Act (APA).

10. Accordingly, this Court should direct Defendants to provide L.M.U. with a constitutionally adequate bond hearing without further delay.

**PARTIES**

11. Plaintiff L.M.U. has been detained by Defendants since December 20, 2019, in connection with his removal proceedings at the Varick Street Immigration Court in lower

Manhattan. Plaintiff is presently detained at the Hudson County Jail in Kearny, New Jersey. Prior to his detention, Plaintiff resided with his family in Suffolk County, New York.

12. Defendant Charles Conroy is named in his official capacity as Immigration Judge for the Executive Office of Immigration Review. He is responsible for administering the immigration laws and presiding over removal proceedings and immigration custody proceedings. While presiding at the Varick Street Immigration Court, he issued the April 1, 2021 bond decision refusing to entertain Plaintiff's request for a new hearing under *Velasco Lopez*. His office is located in New York, New York.

13. Defendant H. Kevin Mart is named in his official capacity as Acting Assistant Chief Immigration Judge for the Executive Office of Immigration Review. He is responsible for administering the immigration laws, overseeing the Varick Street Immigration Court, and presiding over removal proceedings and immigration custody proceedings. His office is located in Louisville, Kentucky.

14. Defendant Jean King is named in her official capacity as the Acting Director of the Executive Office for Immigration Review, which is the sub-agency within the Department of Justice that houses the nation's immigration courts system. Ms. King is responsible for the oversight of immigration proceedings, including oversight of immigration judges and the Board of Immigration Appeals. Her office is located in Falls Church, Virginia.

15. Defendant Merrick Garland is named in his official capacity as the Attorney General of the United States. In this capacity, he oversees the Executive Office for Immigration Review. His office is located in Washington, D.C.

**JURISDICTION AND VENUE**

16. 28 U.S.C. § 1331 confers subject matter jurisdiction on this Court because this case arises under the Administrative Procedure Act ("APA"), the Immigration and Nationality Act ("INA"), and the Due Process Clause of the United States Constitution.

17. Sovereign immunity is waived under 5 U.S.C. § 702.

18. This Court is authorized to award the relief requested under the APA (5 U.S.C. § 701, *et seq.*), the Declaratory Judgment Act (28 U.S.C. § 2201), and the Court's equitable powers.

19. Venue lies in this district under 28 U.S.C. § 1391(e)(1)(A) and (B) because Defendant Conroy's principal place of business is the Varick Street Immigration Court, which lies within this District at 201 Varick Street, New York, New York. In addition, L.M.U.'s custody proceedings take place at the Varick Street Immigration Court, and the order denying him a constitutionally adequate bond hearing was issued by Defendant Conroy at the Varick Street Immigration Court.

**LEGAL BACKGROUND**

*The Agency's Burden Allocation Framework*

20. The Immigration and Nationality Act's discretionary detention provision, 8 U.S.C. § 1226(a), provides that a noncitizen in removal proceedings "may be arrested and detained pending a decision on whether the alien is to be removed," and that the Attorney General "may continue to detain the arrested alien" or "may release the alien on bond . . . or . . . conditional parole."

21. For decades, the Board of Immigration Appeals interpreted this statutory language as requiring immigration authorities to affirmatively demonstrate that an immigration detainee was "not a good risk security-wise . . . or bail-wise." *Matter of Au*, 13 I. & N. Dec. 133, 137-38 (B.I.A.

1968) (citation omitted); *see Matter of Patel*, 15 I. & N. Dec. 666, 666 (B.I.A. 1976) (affirming

that "[a]n alien generally is not and should not be detained or required to post bond except on a

finding that he is a threat to national security . . . or that he is a poor bail risk." (citations omitted)).

22. In 1996, Congress enacted sweeping changes to the INA but did not disturb the

discretionary detention provision, except to modestly increase the minimum bond. Omnibus

Consolidated Appropriations Act, Pub. L. No. 104–208, 110 Stat. 3009 (1996); *compare* 8 U.S.C.

§ 1252(a) (1995), *with* 8 U.S.C. § 1226(a) (1998). Nothing in the text or history of the 1996

immigration laws indicates that Congress intended to alter the decades-old practice of placing the

burden of proof on the government during a typical immigration bond hearing.

23. Beginning in 1999, however, the Board abruptly departed from established practice and

began requiring any detainee seeking release in a § 1226(a) bond hearing to "establish to the

satisfaction of the Immigration Judge and the Board that he or she does not present a danger to

persons or property, is not a threat to the national security, and does not pose a risk of flight."

*Matter of Adeniji*, 22 I. & N. Dec. 1102 (B.I.A. 1999).

24. In *Adeniji*, the Board relied on a new regulation, 8 C.F.R. § 236.1(c)(8) (1999), to

justify shifting the burden of proof from the government to the detained noncitizen. 8 C.F.R.

§ 236.1(c)(8) provides that an arresting immigration enforcement officer may release a noncitizen

detained under 8 U.S.C. § 1226(a) if the noncitizen "demonstrate[s] to the satisfaction of the

officer that such release would not pose a danger to property or persons, and that the alien is

likely to appear for any future proceeding." *See Adeniji*, 22 I. & N. Dec. at 1112 (concluding that

8 C.F.R. § 236.1(c)(8) "contain[s] the appropriate test" for bond hearings before immigration

judges).

25. But 8 C.F.R. § 236.1(c)(8), by its plain text, "applies only to the initial custody determination made by the arresting officer and not to immigration judges in bond hearings." *Velasco Lopez*, 978 F.3d at 849; *see also Adeniji,* 22 I. & N. Dec. at 112 (recognizing that immigration judges are not "officers" under the regulation). There is no regulation regarding the burden of proof that directly applies to immigration judges.

26. The Board nevertheless has issued several precedential decisions reiterating its instruction that immigration judges should place the burden of proof on detainees at their initial bond hearings, *see Matter of Guerra*, 24 I. & N. Dec 37, 40 (B.I.A. 2006); *Matter of Urena*, 25 I. & N. Dec. 140, 141 (B.I.A. 2009); *Matter of Fatahi*, 26 I. & N. Dec. 791, 793 (B.I.A. 2016); *Matter of R-A-V-P*, 27 I. & N. Dec. 803 (B.I.A. 2020), and at changed circumstances bond hearings, *Matter of Siniauskus*, 27 I. & N. Dec. 207, 207 (B.I.A. 2018). The Board, however, has never issued a precedential decision addressing who should bear the burden of proof at a bond hearing after a noncitizen's detention has grown prolonged.[1]

*The Second Circuit Has Held that the Adeniji Standard is Unconstitutional Where Detention Has Grown Prolonged*

27. The overwhelming majority of district courts to have considered the Board's burden-shifting framework have deemed it unconstitutional and have required the government to bear the burden of proof, typically by clear and convincing evidence. *See, e.g., Darko v. Sessions*, 342 F. Supp. 3d 429, 436 (S.D.N.Y. 2018); *Medley v. Decker*, 18-cv-7361 (AJN), 2019 WL 7374408, at *3 (S.D.N.Y. Dec. 11, 2019) (discussing the "overwhelming consensus" of judges in the Southern District on this issue); *Rajesh v. Barr*, No. 6:19-cv-06415-MAT, 2019 WL 5566236, at *6 (W.D.N.Y. Oct. 29, 2019) (joining the "vast majority" of district courts to hold

---

[1] Nor has the Attorney General issued such decision. *See* 8 C.F.R. § 1003.1(h)(1)(i) (providing process for the referral of cases from the Board to the Attorney General.)

that the Due Process Clause required the government to bear the burden by clear and convincing

evidence of justifying detention); *Brito v. Barr*, No. CV 19-11314-PBS, 2019 WL 6333093, at

\*4 (D. Mass. Nov. 27, 2019), appeal filed, (1st Cir. Jan. 8, 2020); *Hernandez-Lara v.*

*Immigration & Customs Enf't, Acting Dir.*, 19-cv-394-LM, 2019 WL 334097, at \*9 (D.N.H. July

25, 2019), *appeal filed sub nom. Hernandez Lara v. Lyons* (1st Cir. Oct. 11, 2019).

28. In *Velasco Lopez*, the Second Circuit agreed that the *Adeniji* framework was

unconstitutional when considering its application to a noncitizen who had been detained for

fifteen months. 978 F.3d at 857. In its decision, the Second Circuit affirmed that precedents from

other civil confinement contexts apply with equal force to the immigration detention context and

require the placement of the burden on the government and the application of the clear-and-

convincing standard of proof to justify detention. *See id.* at 856–57 ("[t]he Supreme Court has

consistently held the Government to a standard of proof higher than a preponderance of the

evidence where liberty is at stake, and has reaffirmed the clear and convincing standard for

various types of civil detention."). The Court reached the same conclusion conducting a ground-

up procedural due process analysis, using the three-factor balancing test laid out by the Supreme

Court in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Velasco Lopez*, 978 F.3d at 851.

29. The Second Circuit did not provide a bright-line rule as to precisely *when* due process

would require the government to bear the burden of proof and satisfy a heightened standard of

justifying detention. It pointed to three guideposts in Mr. Velasco Lopez's case, however:

   a. First, the Court suggested that placing the burden on Mr. Velasco Lopez was

      unconstitutional by the time of his first bond hearing, which took place after three and

      a half months of detention. *Id.* at 852 n.8 (noting the time lapse between detention and

      the initial bond hearing and observing that "[h]ad he been charged with a violent felony

. . . the Government would have been required . . . , to promptly bring him before a magistrate judge where the Government would have been required to carry the burden of establishing by a preponderance of evidence that no conditions of release would reasonably assure the defendant's presence at trial and by clear and convincing evidence that no conditions could assure the safety of the community").

b. Second, it observed that "a presumptively constitutional period of detention does not exceed six months." *Id*. (citing *Zadvydas*, 533 U.S. at 701).

c. Finally, the Court expressly held that "**[o]n any calculus**, Velasco Lopez's fifteen-month incarceration without a determination that his continued incarceration was justified violated due process." *Id*. (emphasis added).

30. The Second Circuit issued *Velasco Lopez* on October 27, 2020. Neither the Attorney General nor the Board has issued a precedential decision interpreting or applying *Velasco Lopez*. Moreover, neither the Attorney General nor the Board has *ever* issued a precedential decision setting forth the procedures required at a § 1226(a) bond hearing for an immigration detainee who has been incarcerated for a prolonged period of time.

## STATEMENT OF FACTS

31. L.M.U. has been incarcerated in a county jail for over sixteen months. Defendants have never provided him with a hearing in which the government is required to justify his detention at all, let alone by clear and convincing evidence.

32. In November 2015, when he was just fourteen years old, L.M.U. fled his home in El Salvador. *See generally* Declaration of Danielle Rosario ("Rosario Decl.") ¶¶ 2-4. He entered the United States that same month and was placed in removal proceedings, where he timely applied

for asylum and related relief. His immigration proceedings are pending in the New York

Immigration Court.

33. L.M.U. has never been convicted of any misdemeanor or felony offense. As a

teenager, he was arrested on three occasions for alleged marijuana possession under New York

Penal Law § 221.10; two of these cases were dismissed and a third was resolved in a disorderly

conduct violation.[2] *See* Rosario Decl. ¶ 8. L.M.U.'s only other contact with the criminal justice

system was on September 22, 2019, when he was accused of helping steal two twelve-packs of

beer and charged with petit larceny under New York Penal Law § 155.25. *Id.* ¶ 9. He was

released on his own recognizance, and the case was adjourned in contemplation of dismissal on

November 18, 2019. *Id.*

34. On or around December 20, 2019, officers from the New York Field Office of U.S.

Immigration and Customs Enforcement ("ICE") arrested L.M.U. at his workplace. ICE elected to

detain L.M.U. pursuant to its discretionary detention authority, *see* 8 U.S.C. § 1226(a), and

transferred him to Hudson County Jail in Kearny, New Jersey. A few days later, on Christmas

Eve Day, Hudson County Jail staff screened L.M.U. for potential mental health issues. At the

time, L.M.U. reported struggling "a little bit" but was in good spirits; he was not prescribed any

medication. Rosario Dec. ¶ 11.

35. L.M.U. remained locked inside Hudson County Jail for five months before the New

York's detained immigration court – the Varick Street Immigration Court – scheduled him for an

initial hearing.

---

[2] The New York legislature recently repealed NYPL 221.10. *See* Marijuana Regulation and
Taxation Act (S. 854-A/A. 1248) (enacted March 31, 2021).

36. During that time, the COVID-19 pandemic ravaged New York and New Jersey. Individuals confined in jails were at particular risk, as social distancing was nearly impossible and personal protective equipment was difficult or impossible to obtain. Cluster outbreaks occurred at several jails, including the Hudson County Jail, where several jail staff died of complications from COVID. *See* Rosario Decl. ¶ 11.[3]

37. In early May 2020, L.M.U. retained The Legal Aid Society as *pro bono* counsel through the New York Immigrant Family Unity Project. L.M.U. has his first appearance on the detained immigration docket, by televideo, a few weeks later, on May 29, 2020. Over the following two months, the court held multiple hearings and addressed change of counsel issues, continued the proceedings for attorney preparation time, and allowed the filing of an amended asylum application and declaration to account for a new claim.

38. On or about September 9, 2020, ICE proffered a heavily redacted letter on Suffolk County Police Department letterhead, dated January 21, 2020. *See* Rosario Decl. ¶ 16; Rosario Decl., Exh. G, Suffolk County Police Department Letter ("Suffolk Letter"). It was the first time that this letter – which was dated over eight months earlier – was shared with L.M.U. or his counsel.

39. The letter alleged that L.M.U. was a member of the Mara Salvatrucha ("MS-13") gang. The purported basis for this allegation was as follows: L.M.U. had spent time on one occasion with his cousin, whom the Suffolk County Police Department alleged was a gang member; L.M.U. was known to have been in the company of unspecified alleged gang members

---

[3] *See also* Monsy Alvarado, Hudson County jail: Two nurses dead and more than 60 people positive for coronavirus, NorthJersey.com (Apr, 6, 2020), https://www.northjersey.com/story/news/hudson/2020/04/06/two-hudson-county-jail-nurses-die-coronavirus-complications/2954964001/.

on five occasions; L.M.U. had an unspecified "gang tattoo"; L.M.U. wore unspecified "gang clothing"; and devil, skull, and cross bones emojis could be found on L.M.U.'s cell phone.

40. L.M.U. presented evidence in support of his asylum claim at his merits hearing on October 1, 2020. Through counsel, he explained that he faced likely persecution and torture for a number of different reasons, including that he would be incorrectly perceived as a gang member in El Salvador because of U.S. law enforcement allegations.

41. At the conclusion of the hearing, visiting Immigration Judge ("IJ") Michael Lloyd concluded that L.M.U. would not be persecuted on this basis, reasoning in part that L.M.U. is *not* a gang member, notwithstanding the Suffolk County Police Department letter. The IJ expressly stated: "this Court, for purposes of the Merit hearing, *holds that the respondent is not a gang member*." Rosario Decl. ¶ 23; Rosario Decl., Exh. C (Transcript) at 16 (emphasis added). Although the IJ noted that the record indicated extrajudicial activity to clamp down on gangs in El Salvador, Rosario Decl., Exh. C at 17, 18, 22, "[h]ere we have someone who is not a gang member." *Id*. at 18 ("this individual, this respondent, is not a gang member."); *id*. at 22 ("Here, we do not have a bona fide gang member."). L.M.U. timely appealed the decision denying his asylum claim.

42. The Immigration Court held a bond hearing for L.M.U. on December 15, 2020. At the bond hearing, IJ Charles Conroy reviewed the same Suffolk County Police Department letter that IJ Lloyd had found to be unpersuasive for purposes of L.M.U.'s asylum hearing. Rosario Decl. ¶ 31; Rosario Decl., Exh. K (First Bond Decision) at 3. For purposes of the custody hearing, however, the Immigration Court "f[ound] this letter to be probative and material with regard to the Respondent's risk of danger to the community." *Id*.

43. IJ Conroy did not indicate that the dismissed charges for alleged marijuana possession or alleged beer theft, on their own, suggested that L.M.U. was a danger to the community. *See generally* Rosario Decl., Exh. K. IJ Conroy did, however, criticize L.M.U. for failing to address certain circumstances of the arrests, particularly "who he was with at the time of these arrests." *Id.* at 3. Concluding that "[t]he record contains insufficient information to show that the facts and circumstances surrounding these charges were insignificant," the IJ "therefore f[ound] that the circumstances of [L.M.U.]'s arrests are properly characterized as dangerous in nature." *Id.* The IJ ultimately decided that L.M.U. "did not meet his burden of proof to establish that he does not pose a danger if released," and denied bond. *Id.*[4]

44. On March 23, 2021, after L.M.U. had been detained for over fifteen months, he requested a new bond hearing where the government bore the burden of proof by clear and convincing evidence, pursuant to *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020). L.M.U. noted that the Second Circuit had held that the government may not detain a noncitizen for a prolonged period of time without demonstrating by clear and convincing evidence that continued detention is warranted. Rosario Decl. ¶ 36. L.M.U.'s counsel further noted the Second Circuit's observation that "'[o]n any calculus,' nearly fifteen months of incarceration constitutes a prolonged period of detention, and thus the holding of *Velasco Lopez* was therefore directly applicable to L.M.U. *See* Rosario Decl., Exh. N, March 23, 2021 Bond Hearing Request at 1 (citing *Velasco Lopez*, 978 F.3d at 855 n.13).

45. On April 1, 2021, IJ Conroy issued a decision denying the request for another hearing. With respect to the request for a burden-shifted bond hearing, he stated: "The court is

---

[4] L.M.U. timely appealed the December 15, 2020 bond denial, and has not yet received a decision from the Board on this appeal. L.M.U does not challenge the agency's December 15, 2020 bond decision in this action.

cognizant of the 'on any calculus' language in *Velasco-Lopez*. However, this administrative court has no power to address a constitutional question, *i.e.*, whether Respondent's prolonged detention has given rise to a due process violation. That is for a fed district court to decide." Rosario Decl., Exh. O, April 1, 2021 Bond Order. IJ Conroy did not explain what constitutional question was left to address, given the Second Circuit's statement that fifteen months of unjustified detention was unconstitutional "on any calculus." *See id*.

46. As his detention has stretched on, L.M.U.'s mental health has declined. In April 2020, L.M.U. reported "not being able to sleep, feeling overwhelmingly sad, and depressed." Rosario Decl. ¶ 13. He sought a psychiatrist to help with inability to sleep and his depression. *Id*. Soon after, he began taking medication for anxiety and depression. *Id*. His dosage had to be doubled in October 2020. *Id*. ¶ 26. Medical records indicate that his anxiety was linked to being locked in detention and concern for his family. *Id*.

*Defendants' Blanket Policy of Denying* Velasco Lopez *Bond Hearing Requests*

47. Upon information and belief, Defendants have adopted a blanket policy of denying requests for burden-shifted bond hearings under *Velasco Lopez*.

48. The Legal Aid Society, the Bronx Defenders, and Brooklyn Defender Services, under the auspices of the New York Immigrant Family Unity Project ("NYIFUP"), provide free legal representation to detained individuals in removal proceedings at the Varick Street Immigration Court ("Varick"). The three NYIFUP providers have made at least thirteen requests for burden-shifted bond hearings pursuant to *Velasco Lopez v. Decker*. *See* Declaration of Myriah J. Heddens ("Heddens Decl.") ¶ 7. All thirteen requests have been denied. *Id*.

49. Upon information and belief, no IJ at Varick has granted a burden-shifted bond hearing under *Velasco Lopez* unless it has been ordered to do so by a federal district court.

50. In denying requests for burden-shifted bond hearings, IJs at Varick have asserted that they lack authority to engage in constitutional analysis to determine whether a *Velasco Lopez* bond hearing is warranted, and therefore cannot provide such a hearing unless so ordered by a federal court. Heddens Decl. ¶¶ 8-9(f).

51. For example, on or around November 19, 2020, an attorney at the Legal Aid Society orally requested a *Velasco Lopez* bond for an individual who had been detained for nearly fourteen months. IJ Dara Reid, sitting at Varick, denied this request in an oral decision, stating that *Velasco Lopez* does not give the IJ authority to shift the burden to ICE. *See* Heddens Decl. ¶ 9(a). On March 23, 2021, IJ Reid denied a different noncitizen a burden-shifted bond hearing in a written decision on similar grounds. She wrote that "without explicit guidance form a binding authority, this Court would be required to conduct an analysis of the constitutionality of the regulations, that of which it has no authority to do." Heddens Decl. ¶ 9(b).

52. On April 19, 2021, IJ David Norkin declined to shift the burden under *Velasco Lopez* to a noncitizen detained for four years. Although he recognized that the detainee had been detained longer than Mr. Velasco Lopez, he asserted that applying *Velasco Lopez* would require him to engage in improper constitutional analysis of federal immigration regulations. Heddens Decl. ¶ 9(d). "As the Second Circuit declined to create a bright-line rule establishing when detention becomes unconstitutionally prolonged for purposes of burden shifting," he wrote, "for this Court to hold a bond hearing under *Velasco Lopez* would require it to engage in an inquiry it does not have the authority to conduct." *Id*.

53. As noted above, IJ Conroy denied L.M.U.'s request for a bond hearing on April 1, 2021. That same day, he denied a similar request for a noncitizen who had been detained for over sixteen months. Heddens Decl. ¶ 9(f). He stated: "The Court is aware of *Velasco-Lopez*.

However, the Second Circuit did not establish a bright-line rule for finding a due process violation under the Constitution. Rather, it stated whether prolonged detention gives rise to a constitutional due process violation requires a case-by-case consideration. This administrative court does not have the power to make such a constitutional determination. That is for a district court to decide." *Id.*

54. On April 23, 2021, the Board of Immigration Appeals ("Board") issued a nonprecedential decision endorsing the same justification for the blanket denials of burden-shifted *Velasco-Lopez* bond hearings. In this decision, the Board wrote, ". . . as the Second Circuit declined to create a bright-line rule [as to what constitutes prolonged detention] . . . the Immigration Judge had no authority to apply a new standard instead of the governing statute or regulation." *Id.* ¶ 10.

### CLAIMS FOR RELIEF

### COUNT ONE
### DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION

55. Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

56. The U.S. Constitution provides that no person shall be deprived of liberty without due process of law.

57. Defendants are responsible for reviewing L.M.U.'s detention to ensure that it is lawful.

58. Defendants have refused to afford L.M.U. a bond hearing in which ICE must prove by clear and convincing evidence that (1) L.M.U's detention is necessary to prevent future danger

to the public or risk of flight, and (2) any perceived risk of danger or flight cannot be adequately mitigated through alternatives to detention or a reasonable monetary bond.

59. Defendants' refusal to provide such bond hearing violates the Due Process Clause of the Fifth Amendment to the United States Constitution.

## COUNT TWO
## ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 706(1)-(2)
*Defendants Have Unlawfully Denied L.M.U. an Adequate Bond Hearing*

60. Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

61. The Administrative Procedure Act provides that "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

62. The APA further provides that the reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed," *id.* at § 706(1), and "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and "contrary to constitutional right, power, privilege, or immunity," *id.* at § 706(2)(A)-(B).

63. Defendants have an obligation under the Due Process Clause, the INA, and the APA to provide L.M.U. with a bond hearing in which DHS must prove by clear and convincing evidence that (1) L.M.U's detention is necessary to prevent future danger to the public or risk of flight, and (2) any perceived risk of danger or flight cannot be adequately mitigated through alternatives to detention or a reasonable monetary bond.

64. Defendants' refusal to provide such a hearing constitutes agency action unlawfully withheld under 5 U.S.C. § 706(1).

65. Defendants' April 1, 2021 decision denying L.M.U. an adequate hearing violates the Due Process Clause and the INA, and is therefore "not in accordance with law" and is "contrary to constitutional right." 5 U.S.C. § 706(2)(A)-(B).

66. Defendants' April 1, 2021 decision denying L.M.U. an adequate bond hearing is arbitrary and capricious because it reflects an unreasoned departure from past precedent and is an unreasonable interpretation of binding precedent.

67. As there is no other statutory mechanism by which L.M.U. may obtain direct judicial review over the actions of Defendant agency officials, L.M.U. has "no other adequate remedy in a court" under 5 U.S.C. § 704.

## COUNT THREE
### ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 706(2)
*Defendants Have Adopted an Unlawful Bond Hearing Policy*

68.     Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

69.     In the six months following the issuance of *Velasco Lopez v. Decker*, Defendants have adopted a blanket policy of declining to apply the holding of *Velasco Lopez* to bond hearing requests at the Varick Street Immigration Court. As a result, immigration detainees like L.M.U. are denied their right to a bond hearing in which the government bears the burden of justifying continued detention by clear and convincing evidence.

70.     Defendants' policy of refusing to consider requests for burden-shifted bond hearings under *Velasco Lopez* is arbitrary and capricious, not in accordance with law, and contrary to constitutional right. 5 U.S.C. § 706(2)(A)-(B).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court grant the following relief:

1)  Assume jurisdiction over this matter;

2)  Hold unlawful and set aside Defendants' April 1, 2021 decision denying Plaintiff an adequate bond hearing on the ground that Defendants' decision violates the Due Process Clause of the Fifth Amendment to the United States Constitution, the Immigration and Nationality Act, and the Administrative Procedure Act;

3)  Hold unlawful and set aside Defendants' blanket policy of refusing to provide a bond hearings under *Velasco Lopez v. Decker*;

4)  Direct Defendants to provide to L.M.U. a bond hearing, within 10-14 days of the Court's order, in which the government must prove, by clear and convincing evidence, that he presents a future danger to the community or a risk of flight that cannot be sufficiently mitigated by an alternative to detention or reasonable bond;

5)  Award L.M.U. his costs and reasonable attorneys' fees in this action as provided for by the Equal Access to Justice Act, 28 U.S.C. § 2412, or other statute; and

6)  Grant any other and further relief that this Court deems just and proper.

Dated: May 4, 2021                         Respectfully submitted,
New York, New York

*/s/ Julie Dona*
Julie Dona
THE LEGAL AID SOCIETY
Immigration Law Unit
199 Water Street, 3rd Floor
New York, NY 10038
646-988-1425
jdona@legal-aid.org

*Counsel for Plaintiff*

19